CARLTON J. HAMILTON v. CHARLES L. AMES AND ABEL H. FROST.

*Landlord and tenant—Agreement to pay taxes—Lease—Assignment —Assessment of taxes—Board of review.*

Where a lessee, chargeable with the *payment of taxes* on the leased premises, examines the assessment at time of the meeting of the board of review, and expresses himself as satisfied

therewith, an assignee who succeeds to his *rights* and *obligations* under the lease in October following cannot complain that the assessment is too high, or that it was not properly reviewed by the board.

Error to Muskegon. (Dickerman, J.) Argued February 6, 1889. Decided February 20, 1889.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Horace L. Delano,* for appellants.
*Bunker & Carpenter,* for plaintiff.

MORSE, J. This is an action in *assumpsit,* brought upon a lease by which on April 29, 1879, Hamilton, Gerrish & Co. leased to the Temple Manufacturing Company for the term of 10 years a portion of block 344 in the city of Muskegon, describing the same by metes and bounds. The Temple Manufacturing Company covenanted in the lease to pay an annual rental of $150, and—

"All and every description of legal taxes and assessments which may accrue against said leased premises during the continuance of this lease."

The plaintiff became the assignee of Hamilton, Gerrish & Co., and the defendants the assignees of the Temple Manufacturing Company under this lease. The defendants paid the rent during their occupancy of the premises, and the taxes, except for the year 1884, which they neglected to pay. For these taxes the premises were sold and bid off to the State October 5, 1886, for the sum of $368.20. The plaintiff did not learn that the taxes were unpaid, and the premises sold, until in the summer of 1887. He at once requested defendants to pay them, but they refused, and he brought this suit.

Two points were relied upon in the court below to show the illegality of these taxes, to wit:

1. That the description of the premises in the lease was not the same as that on the assessment roll, so that the property assessed could be identified as the premises described in the lease.

2. The board of review of the city of Muskegon did not give a proper and legal notice, under the law, of their meeting.

The court below overruled these objections of the defendants, and instructed the jury to find a verdict for the plaintiff in the amount of $445.52.

We think the court was right in this action. The premises described in the lease and occupied by the defendants were substantially the same. Block 344 is near Muskegon lake, and is in shape diagonally to the points of the compass. Of the two southerly corners it is not easily ascertained which is the south-westerly, or which is the south-easterly. The description commences—

"Beginning at the south-westerly corner of block 344 of said city," etc.

The premises assessed on the tax roll are described as the "West two-thirds of block 344." It is admitted that if the description in the lease should be considered as commencing at one of these southerly corners it would correctly cover and embrace the west two-thirds of the block. But the defendants insisted that the other corner was the south-westerly corner, and, if so, the description of the lands in the lease was not identical with the premises assessed.

It is evident from the description in the lease itself that the corner intended as a starting-point is the one claimed by the plaintiff to be the south-westerly corner. If the description be run from the other corner, it cannot be traced, and embraces nothing. At the time the lease was executed, the parties to it made a map of the premises, which located them as they would be described under the plaintiff's claim, from his starting-point in the

lease. The premises possessed and occupied by the defendants and their assignor under this lease are the identical lands claimed by the plaintiff to be described in the lease, and as shown by this map. The defendants, during their occupancy, paid the taxes for the years 1885 and 1886 upon a description in the assessment roll exactly the same as that of 1884, to wit, "the west two-thirds of block 344," and found no fault with the sufficiency of the description, and made no complaint that it was not identical with the premises occupied.

We shall not stop to inquire whether or not the board of review gave a proper notice of its meeting to review the assessment of 1884. The defendants became the owners of the lessee's interest by assignment from the Temple Manufacturing Company, in October, 1884. Therefore when the board met to review the assessments, in 1884, the property was in the possession of the Temple Manufacturing Company, and the assessment was placed on the roll against that company.

It appeared in evidence that A. F. Temple was the managing man of that company, and looked after the assessment of taxes upon its property. He testifies that he went in every year of the company's occupancy of the premises to ascertain if the assessment of the property was correct; ascertained what the assessment was in 1884, and was satisfied with it. The Temple Manufacturing Company was the only party interested in this assessment at the time the board of review met, and the only one to complain of any irregularity or wrong committed. The company was satisfied with the assessment, and the defendants cannot now complain that it is too high, or that it was not properly reviewed by the board of review.

In the supplemental brief of defendants' counsel the point is raised for the first time in the case that the taxes were assessed under the law of 1882, but sold under

the provisions of the law of 1885; that the sale was void, and that consequently the court erred in directing the verdict for the amount of the sale, and interest, under that law. The verdict should have been for the amount of the tax and interest, without the addition of the costs and expenses of the illegal sale; but as the attention of the court was not called to this point, and the contention on the trial below was whether the verdict should be for the plaintiff for the amount rendered, or for the defendants, we shall not reverse the judgment or grant a new trial.

The verdict and judgment below will be amended so that it will represent the amount of the taxes assessed against the property and the interest upon the same under the tax laws to the date of judgment in the court below, the plaintiff to recover costs of both courts.

The other Justices concurred.